# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | |
|---|---|
| ANDREA M. WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) NO. 3:11-CV-336 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits and Supplemental Security Income to Plaintiff, Andrea M. Williams. For the reasons set forth below, the Commissioner of Social Security's final decision is **AFFIRMED**.

BACKGROUND

On January 9, 2007, Plaintiff, Andrea M. Williams ("Williams"), applied for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. section 401 et seq. Plaintiff was twenty-eight years old when she filed her application. The application identified her "primary diagnosis" as diabetes mellitus and "affective disorders." Her

application was initially denied on April 24, 2007. This determination was affirmed on July 6, 2007. Plaintiff then filed a written request for a hearing before an administrative law judge ("ALJ"). A hearing before ALJ Gregory M. Hamel was held on October 5, 2009, where both Plaintiff and Vocational Expert Howard Steinberg testified. ALJ Hamel issued his decision on January 19, 2010. ALJ Hamel found Plaintiff was not under a disability, as defined in the Social Security Act, at any time from December 31, 2005, the alleged onset date, through June 30, 2009, the date last insured. Accordingly, ALJ Hamel denied Plaintiff social security benefits.

Plaintiff requested review by the Office of Hearings and Appeals. On June 23, 2011, the Appeals Council issued its decision affirming ALJ Hamel. Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). On August 22, 2011, Plaintiff initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. section 405(g). This Court now properly reviews the Commissioner's final decision.

DISCUSSION

Facts

At the hearing, Williams testified she learned that she had chronic and hereditary pancreatitis at age 7. (Tr. 50). Williams'

doctor has noted that she has had a prolonged and complicated medical history. (Tr. 254, 270). Her history includes having stents installed in her liver; having part of her bowel reconstructed; part of her pancreas, spleen, gall bladder, appendix and stomach have been removed; and she has encountered problems, including pancreatic pseudocysts, fistula between the stomach and cysts, and recurrent pancreatitis. (Tr. 277; 254). In January 2006, Williams was admitted and underwent the placement of a protective stent in the bile duct. (Tr. 196-199). At the time of admission, Williams was asymptomatic and did not have any complaints other than mild jaundice. (Tr. 198).

In April 2007, Williams underwent a physical examination at the request of the agency. (Tr. 253-256). Consultative examiner Dr. Sandeep Gupta reported that Williams was comfortable, cooperative and delightful during the examination, which was unremarkable. (Tr. 254-256). Dr. Gupta did recount that Williams suffered a massive hemorrhage, had a clot in the portal vein with "subsequent cavernous transformation of the portal vein." (Tr. 254). Dr. Gupta's clinical impression was:

> Many, many problems including hereditary pancreatitis, chronic pancreatitis, secondary to diabetes, common bile duck [sic] stricture, elevated liver levels of unclear etiology and depression. All of these cause significant secondary problems and I feel this claimant needs all the help she can get.

(Tr. 256).

Following Dr. Gupta's examination, Dr. Fernando R. Montoya, a

state agency physician, reviewed the medical evidence and filled out a "Physical Residual Functional Capacity Assessment" form. (Tr. 257-264). Dr. Montoya opined that Williams could perform light work activity. (Tr. 258-264). Notably, Dr. Montoya concluded:

> The claimant's allegations and contentions regarding the nature and severity of the impairment-related symptoms and functional limitations are found to be partially credible. While the allegations regarding the nature of these symptoms are found to be supported within the medical and other evidence in file, the contentions regarding the severity of, and the related functional restrictions, are not supported. The findings specified within this assessment are more consistent with the appropriate medical findings and the overall evidence in file than the allegations made by the claimant.

(Tr. 262). Ultimately, Dr. Montoya found that Williams could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk 6 hours in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday and push and/or pull with the same limits as lifting and/or carrying. (Tr. 258).

In August 2007, Williams visited Dr. William Kessler at the gastroenterology clinic for concerns regarding a complex history of chronic pancreatitis, liver disease and possible liver cirrhosis. (Tr. 324-326). Williams reported feeling "fairly well", but was concerned about a 15-20 pound weight gain over the past 4-6 months. She reported that she had been put on ursodiol in February 2007, but this caused abdominal discomfort and she stopped using it.

(Tr. 324). After she stopped taking ursodiol she felt much better. (Tr. 324). Dr. Kessler's physical examination of Williams was unremarkable. (Tr. 325). In October 2008, Williams rated her pain at a level 3 on a scale of one to ten. (Tr. 290).

Williams has been under the care of Brian Leon, M.D. since 1997. (Tr. 143). Dr. Leon has completed two medical statements regarding Williams' chronic pancreatitis, one on October 6, 2008, and the other on March 6, 2009.

On October 6, 2008, Dr. Leon found that Williams' "symptoms and signs" suffered are "present chronically," including abdominal pain, nausea and vomiting. (Tr. 298). The frequency of attacks of chronic pancreatitis occurred more than once a month. (Tr. 299). In Dr. Leon's opinion, Williams' condition would not allow her to work an 8 hour a day job 5 days per week consistently because she could not stand for more than 15 minutes at one time, could not stand for more than 60 minutes in a work day, and could not lift occasionally or frequently. (Tr. 299). Two days later, Dr. Leon wrote a letter identifying himself as Williams' primary care physician. (Tr. 331). In that letter, Dr. Leon indicates that he is aware Williams has applied for disability, and goes on to write:

> In addition to her other medical problems that are extensively documented elsewhere, she has insulin dependent diabetes mellitus. This condition requires her to check her blood glucose levels frequently throughout the day, give herself several injections of insulin during the day, and causes her to need to see the doctors on a frequent basis. This disease further limits her ability to seek gainful employment.

(Tr. 331).

On March 6, 2009, Dr. Leon reported that Williams' conditions include: "chronic pancreatitis, splenomegaly, cirrhosis, fatigue and weakness and portal hypertension." (Tr. 300). Again, in Dr. Leon's opinion, Williams' condition would not allow her to work an 8 hour a day job 5 days per week consistently because could not stand for more than 15 minutes at one time, and could not lift occasionally or frequently, any weight. (Tr. 301).

Williams reported that she took 10 different prescribed medications, including morphine sulfate to address breakthrough pain and methadone. (Tr. 296).

Williams testified that an aneurism was discovered when she was 20 years old. (Tr. 52). To correct the aneurism, an embolization was performed. (Tr. 53). Williams stated that Dr. Leon told her not to lift anything due primarily to her aneurism. (Tr. 58). Williams believes the restriction on lifting was to decrease the risk of a blood clot being released and to keep her blood pressure down. (Tr. 53).

At the hearing, Williams testified that she worked regularly as a part-time nurse from 2002 through 2005, but she stopped working around December 31, 2005. (Tr. 42, 50). Around that time, she was pregnant with her son and testified that her "liver disease got increasingly worse. I got the jaundice started coming in, the raised liver enzymes, and at that point, I just, the fatigue of

being tired from all the pain medicines I was on, and I just could no longer work." (Tr. 43). In addition, she was "not allowed to lift due to the aneurism." (Tr. 54).

Williams testified that she has to go "day by day." Typically, she is unable to do any activity or complete any tasks on two to three days per week due to fatigue and chronic pain as well as vomiting and diarrhea. (Tr. 44). During these days, her family has to help with chores and childcare. (Tr. 45). Her husband prepares most of the family's meals. (Tr. 45). And, Williams has a person to come into their home on Mondays, Wednesdays and Fridays to clean the home and do laundry. (Tr. 46). Williams has a driver's license and drives approximately three times per month. (Tr. 47).

At the hearing, Vocational Expert Howard Steinberg testified. (Tr. 59-66). Steinberg classified Williams' past relevant work as light to medium in exertion. (Tr. 62-63). ALJ Hamel asked Steinberg to identify any jobs Williams could perform considering her vocational profile (age, education and past relevant work experience) and a limitation to light work that did not require climbing ladders or scaffolds or exposure to work hazards. (Tr. 63-64). Steinberg testified that an individual with those limitations could perform Williams' past work as well as 1,100 other jobs available throughout Indiana. (Tr. 64-65).

REVIEW OF THE COMMISSIONER'S DECISION

Standard of Review

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). This Court must affirm the Commissioner's factual findings if they are supported by substantial evidence. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). While the ALJ "must build an accurate and logical bridge from the evidence to the conclusions," he need not discuss every piece of evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). However, this Court reviews the ALJ's findings of law de novo and, if the ALJ makes an error of law, this Court may reverse without regard to the volume of evidence in support of the actual factual findings. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999). *See also Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Analysis of Social Security Act

To be considered for disability insurance benefits, a claimant must establish that she is disabled. To qualify as being disabled, the claimant must demonstrate that she is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(1). To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five step evaluation:

| | |
|---|---|
| Step 1: | Is the claimant performing substantial gainful activity: If yes, the claim is disallowed; if no, the inquiry proceeds to Step 2. |
| Step 2: | Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months? If not, the claim is disallowed; if yes, the inquiry proceeds to Step 3. |
| Step 3: | Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1? If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to Step 4. |
| Step 4: | Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the inquiry proceeds to Step 5, where the burden of proof shifts to the Commissioner. |
| Step 5: | Is the claimant able to perform any other work within his residual functional capacity in the national economy: If yes, the claim is denied; if no, the claimant is disabled. |

20 C.F.R. §§ 404.1520(a)(4)(i)–(v) and 416.920(a)(4)(i)–(v). *See also Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Dixon*, 270 F.3d at 1176. If the claimant reaches step five, the burden shifts to the Commissioner to show that the claimant is capable of performing

work in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

ALJ Hamel correctly applied the 5-step disability evaluation. ALJ Hamel concluded that Williams had the residual functional capacity to perform a full range of light work, including the ability to perform her past work as a retail cashier and as a psychiatric aid (Tr. 25). Thus, Williams's claim failed at step 4 of the evaluation process. Williams believes that ALJ erred in two ways in coming up with the Residual Functional Capacity ("RFC"). First, Williams complains that ALJ Hamel did not give her treating physician's opinion controlling weight. And, second, Williams argues that ALJ Hamel erred by not addressing the impact of her pain control medications with regard to her ability to perform work.

Treating Physician

Williams contends that ALJ Hamel failed to adhere to the "treating physician rule," which provides that a treating physician's opinion that is consistent with the record is generally entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). An ALJ who rejects a treating physician's opinion must provide a sound explanation for the rejection. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). Medical evidence may be discounted if it is

internally inconsistent or inconsistent with other evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2007). In the event the ALJ chooses to discount the treating physician's opinion, the ALJ is required to provide "good reasons" for such an action. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011).

Dr. Brian Leon, has identified himself as Williams' primary treating physician. In his opinion, Williams suffers from "extreme pain" and is unable to engage in gainful employment based on her inability to stand for prolonged periods of time and her inability to lift on either an occasional or frequent basis. (Tr. 299, 301).

ALJ Hamel gave "very little weight" to Dr. Leon's conclusions. (Tr. 24). ALJ Hamel noted that Dr. Leon's findings that Williams is incapable of lifting anything is contradicted by many things, including her own description of daily activities that included caring for her child, driving and preparing simple meals. (Tr. 24). In addition, the ALJ pointed to a 2007 report by Dr. Gupta, which found Williams had no physical strength limitations and her admission that she can carry 20 pounds on each side. (Tr. 254-256). The ALJ further noted that Dr. Leon's finding of "extreme pain" in October of 2008 conflicted with Williams' self-report of having only minor pain earlier that month. (Tr. 290). Finally, ALJ Hamel discounted Dr. Leon's statement that Williams is unable to work because that issue is reserved to the Commissioner of the Social Security Administration. (Tr. 24).

ALJ Hamel provided a sound explanation and good reasons for his conclusion by pointing out the inconsistency between Dr. Leon's finding and other conflicting evidence in the record. Again, it is true that a treating physician's opinion is given controlling weight when it is "well-supported by medically acceptable clinic and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). However, Dr. Leon's finding that Williams was unable to lift anything is not supported by any acceptable diagnostic techniques.[1] In fact, the only thing Williams points out that supports Dr. Leon's finding is her own testimony that she is concerned that lifting anything will release a blood clot. (DE# 11, pp. 6-7). Not only is Dr. Leon's finding not supported by diagnostic evidence but, as ALJ Hamel points out, it is also inconsistent with other substantial evidence, including the opinions of Dr. Gupta and Dr. Montoya. This Court recognizes that there is evidence in the record that supports Dr. Leon's opinion and evidence that conflicts with it. Although reasonable jurists may arrive at different conclusions regarding the credibility of Dr. Leon's opinions, ALJ Hamel was within his bounds to discredit them.

---

[1] Williams claims that because Dr. Leon's progress notes and descriptions of procedures and tests that have been performed show that objective evidence to support his finding is in the record. However, the mere inclusion of these items does not establish that Dr. Leon's conclusion is based on acceptable clinical or diagnostic techniques.

Not only was ALJ Hamel not bound by Dr. Leon's medical opinion regarding Williams' abilities and limitations, but the determination of a claimant's residual functional capacity is reserved to the ALJ. 20 C.F.R. § 404.1527(e)(2). So, Dr. Leon's opinion that Williams was unable to work is not binding on ALJ Hamel.

Complaints of pain and effect of pain medication

Williams argues that ALJ Hamel failed to properly consider her complaints of pain and effect of pain medication. With regards to Williams' complaints of pain, ALJ Hamel found:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limited effects fo these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. First, Ms. Williams apparently stopped working due to her pregnancy and not due to the impairments which she claims prevents her from working. It is especially noteworthy that she was doing light to medium work until her child was born. The claimant has a history of non-compliance with medical recommendations. In February 2009, for example, she admitted to her doctor that she was not taking her insulin. The claimant stated she has a neighbor who stays with her 18 hours a week, but there is nothing in the record to suggest that Ms. Williams is limited to such a degree that she needs to have a live-in companion for all or part of the week.

(Tr. 23).

ALJ Hamel found, with regards to Williams pain medication, that:

> For pain, the claimant takes methadone and as needed morphine sulfate for "breakthrough pain." The undersigned recognizes that Ms. Williams has discomfort, and this finding is supported not only for her need for medication and her reliance on others to help with some household tasks. However, the evidence viewed as a whole suggests she can carry out the modest requirements of light work.

(Tr. 24).

In judging a claimant's subjective complaints of pain, the ALJ "must investigate all avenues presented that relate to pain, including claimant's work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities." *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994).

ALJ Hamel found that Williams' impairments could be reasonably expected to cause pain; however, as explained in the prior section, the extent of Williams' subjective complaints of pain were not found to be credible. The credibility determinations of an ALJ are given deference and will be overturned only if unreasonable or unsupported. *Smith v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). This Court finds ALJ Hamel's credibility determination to be neither unreasonable nor unsupported.

Although Williams complains that ALJ Hamel failed to consider

the effect of the two pain medications - Methadone and morphine sulfate- upon her ability to work, she fails to articulate where in the record these pain medications are shown to have any effect on her ability to work.  Instead, Williams merely states that "[i]t is well known that both methadone (an opiate) and morphine often cause drowsiness and an inability to perform certain kids of work and activities."  (DE# 11, pp. 10-11).  It is worth pointing out that Debra Graber, who is Williams' mother, completed a function report, detailing how Williams' conditions limit her activities.  Ms. Graber spends approximately six to twelve hours a week with Williams.  Ms. Graber does not mention that any prescribed medications affect Williams' abilities to function on a daily basis.  For these reasons, it is not surprising that ALJ Hamel found that, despite being on the prescription medications, "the evidence viewed as a whole suggests she can carry out the modest requirements of light work."  (Tr. 24).

Ultimately, ALJ Hamel did not err in finding that Williams retained the residual functioning capacity to perform light work. The ALJ was aware of the applicable factors -he cited to them in his opinion- and followed them in making his decision.  He considered the objective medical evidence and Williams' testimony in order to determine how Williams' impairment affected her ability to perform this type of work.  The credibility determination is entitled to special deference and this Court sees no reason to

overturn his findings.

This Court cannot conclude without acknowledging that Williams has shown ALJ Hamel's decision is not perfect[2]; however, it does not need to be to withstand this Court's scrutiny.  While ALJ Hamel's opinion is imperfect, its conclusion is still supported by substantial evidence and, therefore, the Court will not overturn the decision.

CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **AFFIRMED**.

**DATED: September 26, 2012**          /s/RUDY LOZANO, Judge
                                       **United States District Court**

---

[2] Williams does point out instances where ALJ Hamel misstates facts in the record.  However, this Court is unconvinced that any of the identified mistakes require a remand.